UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROB SCHOCKE,

     Plaintiff,

vs.                                  Case No.   3:20-CV-5570

ROBERT CRAMER AND
AMANDA M. CRAMER,
husband and wife,

     Defendants.

_____/

## NOTICE OF REMOVAL OF CIVIL ACTION

Defendants Robert Cramer and Amanda Cramer ("the Cramers"), pursuant to

28 U.S.C. §§ 1441 and 1446, file this Notice of Removal of this action from the circuit

court of Escambia County, Florida, to the United States District Court for the Northern

District of Florida, Pensacola Division.  The grounds for removal are as follows:

## INTRODUCTION

1.     Plaintiff, Rob Schocke, filed this contract action against the Cramers on

June 3, 2020.  *See* Complaint, p. 1 (**Exh. 1**).  Plaintiff alleges the Cramers breached a

contract for the purchase and sale of real property located in Escambia County,

Florida.  *Id.* at ¶¶ 2-13.

2.     The Court has original jurisdiction over this action under 28 U.S.C. §

1332, and this action is removable under 28 U.S.C. § 1441(a), in that this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3.     Pursuant to Local Rule 7.2(A), copies of all process, pleadings, orders and other papers or exhibits filed in the state court will be filed with the Court within 14 days.

## DIVERSITY OF CITIZENSHIP EXISTS

4.     Plaintiff is and was at the commencement of this action a citizen of Texas.  *See* Exh. 1 to Complaint.

5.     The Cramers are and were at the commencement of this action citizens of Louisiana.

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

6.     The allegations in Plaintiff's complaint reveal that the amount in controversy is in excess of $75,000.

7.     Plaintiff seeks specific performance of the Residential Contract for Sale and Purchase (Exh. 1 to Complaint) and various addenda thereto (*id*. at Exhs. 2, 3, 4, 5, and 6) (collectively, the "Purported Contract").

8.     According to the sales price in the Purported Contract, the value of the real property to be sold was $575,000.  *See* Exh. 1 to Complaint, p. 1; Exh. 3 to Complaint.

9.    In light of the value of the real property as set forth in the Purported Contract, the amount in controversy is satisfied for this Court's diversity jurisdiction. "When the value of the property sought to be obtained by specific performance exceeds the sum which might have been awarded in damages, the amount in controversy is established by the value of the property." *Occidental Chemical Corp. v. Bullard*, 995 F. 2d 1046, 1047 (11th Cir. 1993) (reversing trial court's remand to state court where the fair market value of the property in dispute in a claim for specific performance exceeded the amount in controversy for diversity jurisdiction). "'[I]t is the value of the property rather than the claim of the contending parties which fixes the amount in controversy for purposes of jurisdiction.'" *Id*. at 1048 (quoting *Peterson v. Sucro*, 93 F. 2d 878, 882 (4th Cir. 1938)).

10.    In a suit seeking specific performance arising under a contract to purchase real estate (and in which money damages are not otherwise specified), the court may look to the contracted-for sales price to satisfy the amount in controversy requirement. *See Medallion Homes Gulf Coast, Inc. v. Gevorgyan*, 2007 WL 947895 (M.D. Fla. Mar. 27, 2007) (denying motion to remand in action for specific performance where balance due under contract to sell real property was in excess of $475,000); *Neuman v. Levan*, 2009 WL 1856580, *3 (D.S.C. June 26, 2009) ("The Court finds that Plaintiffs satisfied the amount-in-controversy

3

requirement by seeking the remedy of specific performance and specifying that the contract called for the sale of land for $508,000.")

11.   A removing defendant bears the burden of establishing that the amount in controversy more likely than not exceeds the jurisdictional requirement. *See Pate v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 3372195, *1 (N.D. Fla. 2010). That said, a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it. *Id*. at *1-2. "A district court may rely on its 'judicial experience and common sense' to determine whether a claim satisfies the amount-in-controversy requirement." *Id*. at *2. (citing *Roe v. Michelin North America, Inc*., 613 F.3d 1058 (11th Cir. 2010). "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe* at 1061 (citing *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754 (11th Cir. 2010)).

12.   The evidence before the Court—notably, the contracted-for sales price of $575,000 in the Purported Contract—demonstrates that it is more likely than not that the amount in controversy as to Plaintiff's claims exceeds $75,000.

## REMOVAL IS OTHERWISE PROPER

13.     Plaintiff commenced this action on June 3, 2020.  The Cramers voluntarily accepted service on June 17, 2020.  Therefore, this Notice of Removal is timely filed within 30 days of receipt of the initial pleading and within one year of commencement of the action.

14.     Venue exists in the Northern District of Florida, Pensacola Division, because the circuit court of Escambia County, Florida, is within the Pensacola Division.

15.     Written notice of the filing of the Notice of Removal will be promptly served on Plaintiff's counsel, and a copy will be promptly filed with the clerk of the circuit court for Escambia County, Florida, pursuant to 28 U.S.C. § 1446(d).  A copy of the Notice of Filing of Notice of Removal of Civil Action is attached hereto as **Exhibit 2**.

## CONCLUSION

WHEREFORE, the Cramers pray that this action be removed to the Pensacola Division of the United States District Court for the Northern District of Florida, from the Circuit Court in and for Escambia County, Florida.


\*     \*     \*

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been furnished to the following counsel of record by e-mail on June 17, 2020:

Charles P. Hoskin
Emmanuel Sheppard & Condon
30 S. Spring Street
Pensacola, FL  32502
choskin@esclaw.com
lbouler@esclaw.com
adk@esclaw.com

*/s/ Cecily M. Parker*_____
CHARLES WIGGINS
Fla. Bar No.:  0048021
ctw@beggslane.com (primary)
amn@beggslane.com (secondary)
CECILY M. PARKER
Fla. Bar No.:  98170
cmp@beggslane.com
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL  32502
T:  (850) 432-2451
F:  (850) 469-3331
*Attorneys for Defendants*

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**ROB SCHOCKE,**

      **Plaintiff,**

**vs.**

**ROBERT CRAMER AND
AMANDA M. CRAMER,
husband and wife,**

      **Defendants.**

**Case No.** 2020 CA 000697
**Division:** E

_____/

## COMPLAINT

Plaintiff Rob Schocke sues Defendants Robert Cramer and Amanda M. Cramer, husband and wife, and alleges as follows:

1.     This is an action for specific performance of a contract to convey real property located in Escambia County, Florida, or in the alternative for damages which exceed $30,000.00.

2.     On or about April 9, 2019, Plaintiff and Defendant's entered into a written contract for the purchase and sale of the following described real property in Escambia County, Florida:

> Lot 5, Block J, Sunset Pass, a Planned Unit Development being a re-plat of Lots 124 and 125 of Gulf Beach Subdivision, as recorded in Plat Book 4, Page 52, according to the plat thereof, recorded in Plat Book 16, Page 63, of the public records of Escambia County, Florida

A copy of the Contract is attached hereto as Exhibit "1".

3.     On or about April 8, 2019, Plaintiff and Defendants executed Addendum #1 to the Contract increasing the purchase price to $575,000.00, identifying items that would not convey with the property, and the seller not providing a home warranty.  A copy of Addendum #1 is attached hereto as Exhibit "2".

Complaint - Page 1 of 5

**EXHIBIT 1**

4. On April 16, 2019, Plaintiff and Defendants executed Addendum #3 to the Contract with the purchase price of $575,000, seller agreeing to mitigate the mold and replaced the roof, providing for an option for colors of paid and providing an allowance of the price per gallon of paint, providing that the home inspection would take place within fifteen days after all repairs are completed, roof, mold and water damage, identifying items would not convey with the property, buyer and his agent to be present when the mold mitigation is done, and boat slip #17 to convey with the property. A copy of Addendum #3 attached hereto as Exhibit "3".

5. On or about October 23, 2019, Plaintiff and Defendants executed an addendum to the Contract extending the closing date until November 30, 2019. A copy of Addendum #3 is attached hereto as Exhibit "4".

6. On or about November 19, 2019, Plaintiff and Defendants executed Addendum #3 to the Contract extending the closing date until February 29, 2020. A copy of Addendum #3 is attached hereto as Exhibit "5".

7. On February 29, 2020, Plaintiff and Defendants executed Addendum # 2 to the Contract extending the closing date until April 30, 2020, identifying the paint color of the walls – Interior, ceiling, trim/doors/cabinets, scheduling the termite inspection, giving the buyer an allowance for carpet and the option to select the color, and buyer to release the earnest money to sell or if after all contingencies have been removed and buyer decides to not proceed with purchasing 13932 Playa Way, Pensacola, Florida. A copy of Addendum #2 is attached hereto as Exhibit "6".

8. Defendants breached the Contract by failing to complete the repairs to the roof and mold remediation.

9.    Defendants' agent advised the Plaintiff that the Defendants were not going to make the repairs and not going to close.

10.    In paragraph 16 Dispute Resolution in subparagraph (b) the Contract provides as follows:

"(b)  Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this paragraph 16 (b). Disputes not settle pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract."

11.    On May 28, 2020, the attorney for the Plaintiff notified the Defendants of the dispute and invoked the remedy of mediation as provided in the Contract.  A copy of the letter is attached hereto as Exhibit "7".

12.    On May 29, 2020, the attorney for the Defendants advised that the attorney for Plaintiff by email the Contract had terminated and that the Defendants were not going to mediate pursuant to the terms of the Contract.   A copy of the e-mail is attached hereto as Exhibit "8".

13.    Plaintiff has retained the undersigned attorneys to represent him in this action, and pursuant to paragraph 17 of the Contract, is entitled to recover attorneys' fees from the Defendants as prevailing party.

## COUNT I

14.     Paragraphs 1 through 13 are realleged and incorporated into this Count by reference and Plaintiff alleges further:

15.     Defendants have refused to submit the dispute to mediation as required by the Contract.

WHEREFORE Plaintiff demands entry of an order compelling the Defendants to attempt to settle this dispute through mediation as provided by paragraph 16(b) of the Contract and for an order awarding Plaintiff attorneys' fees and costs as the prevailing party.

## COUNT II

16.     Paragraphs 1 through 13 are realleged and incorporated into this Count by reference and Plaintiff alleges further:

17.     This is an action for specific performance of a contract for sale and purchase of real property in Escambia County, Florida.

18.     Defendants breached the contract by failing to make repairs to the roof, failing to perform mold repair and remediation required by the Contract, and refused to proceed to closing in accordance with the terms of the Contract.

19.     Plaintiff has fully performed his obligations under the Contract and stands ready, willing, and able to close in accordance with the terms of the Contract.

20.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands court enter a judgment for specific performance ordering Defendants to convey the property to the Plaintiff in accordance with the terms and conditions of the Contract, failing which, Plaintiff requests the court to appoint a Special Magistrate to convey Defendants' interest in the property to the Plaintiff.

## COUNT III

21.    Paragraphs 1 through 13 are realleged and incorporated by reference herein, and Plaintiff alleges further.

22.    This is an action for damages which exceed $30,000.00.

23.    Defendants breached the Contract by failing to complete repairs to the roof, to remediate mold, and to close the sale as required by the terms of the Contract.

24.    As a result of defendant's breach, Plaintiff has suffered the following damages:

    a.  Loss of earnest money deposit;

    b.  Loss of the net increase in market value of the property;

WHEREFORE Plaintiff demands judgment against Defendants for damages, costs of this action, and for attorney's fees.

CHARLES P. HOSKIN, ESQ.
Fla. Bar No. 364401
Emmanuel Sheppard and Condon
30 South Spring Street
Pensacola, FL 32502
Telephone:  (850) 433-6581
Telecopier:  (850) 434-7163
E-mail:  choskin@esclaw.com
             lbouler@esclaw.com
             adk@esclaw.com
Attorneys for Plaintiff

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63



Westerheim Realty

# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**PARTIES:** _____ Cramer _____ ("Seller"),

and _____ Schocke or Assignee _____ ("Buyer"),

agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property (collectively "Property") pursuant to the terms and conditions of this Residential Contract For Sale And Purchase and any riders and addenda ("Contract"):

**1. PROPERTY DESCRIPTION:**

(a) Street address, city, zip: _____ 13932 Playa Way, Pensacola, Fl. 32507 _____

(b) Located in: ___Escambia___ County, Florida. Property Tax ID #: _____ 143S321011050010 _____

(c) Real Property: The legal description is Sunset Pass Lot 5 Blk J _____

_____

together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms of this Contract.

(d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access devices, and storm shutters/panels ("Personal Property").

Other Personal Property items included in this purchase are: WASHER/DRYER.FRIG, ALL FURNITURE _____

Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.

(e) The following items are excluded from the purchase: _____

_____

## PURCHASE PRICE AND CLOSING

**2. PURCHASE PRICE** (U.S. currency): ......................................................... $ ___565,000.00___

(a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $ ___5,000.00___

The initial deposit made payable and delivered to "Escrow Agent" named below **(CHECK ONE): (i)** ☐ accompanies offer or **(ii)** ☐ is to be made within _____ (if left blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii) SHALL BE DEEMED SELECTED.

Escrow Agent Information: Name: _____ Litvak, Beasley and Ball LLC _____

Address: _____ 40 S Palafox Dr. Pensacola ,Fl 32502 _____

Phone: _850-432-9818_ E-mail: _____ Fax: _____

(b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10) days after Effective Date ............................................................. $ _____

(All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")

(c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ....... _____

(d) Other: _____ ............. $ _____

(e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire transfer or other **COLLECTED** funds ............................................... $ ___560,000.00___

NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.

**3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**

(a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before _____ April 6, 2019 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the counter-offer is delivered.

(b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed and delivered this offer or final counter-offer ("Effective Date").

**4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on _____ October 30, 2019 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials _____    Page 1 of 13    Seller's Initials _____

FloridaRealtors/FloridaBar-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

RC 04/08/19 2:49 PM CDT dotloop verified

AMC 04/09/19 12:56 PM CDT dotloop verified

Serial#: 000745-900155-4511101

EXHIBIT
1
Blumberg No. 5119

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy, except with respect to any items identified by Buyer pursuant to Paragraph 12, prior to taking occupancy, which require repair, replacement, treatment or remedy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

<div align="center">

**FINANCING**

</div>

**8. FINANCING:**

☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

Buyer's Initials _____   Page 2 of 13   Seller's Initials _RC_ _AMC_
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 000745-900155-4511101

04/08/19 2:49 PM CDT dotloop verified   04/09/19 12:56 PM CDT dotloop verified

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

(iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
(2) terminate this Contract.

(v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

(vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.

(vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

☐ (c) Assumption of existing mortgage (see rider for terms).
☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

## CLOSING COSTS, FEES AND CHARGES

**9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
(a) **COSTS TO BE PAID BY SELLER:**
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)
- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees
- Other:_____

Seller shall pay the following amounts/percentages of the Purchase Price for the following costs and expenses:
(i)  up to $_____ or _____ % (1.5% if left blank) for General Repair Items ("General Repair Limit"); and
(ii) up to $_____ or _____ % (1.5% if left blank) for WDO treatment and repairs ("WDO Repair Limit"); and
(iii) up to $_____ or _____ % (1.5% if left blank) for costs associated with closing out open or expired building permits and obtaining required building permits for any existing improvement for which a permit was not obtained ("Permit Limit").

If, prior to Closing, Seller is unable to meet the Maintenance Requirement as required by Paragraph 11 or the repairs, replacements, treatments or permitting as required by Paragraph 12 then, sums equal to 125% of estimated costs to complete the applicable item(s) (but not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above, if any) shall be escrowed at Closing. If actual costs of required repairs, replacements, treatment or permitting exceed applicable escrowed amounts, Seller shall pay such actual costs (but not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above). Any unused portion of escrowed amount(s) shall be returned to Seller.

(b) **COSTS TO BE PAID BY BUYER:**
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Municipal lien search (if Paragraph 9(c)(ii) is checked)
- Other:_____
- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related insurance
- Owner's Policy Premium (if Paragraph 9 (c)(iii) is checked.)

(c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked, then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be

Buyer's Initials_____                Page 3 of 13                Seller's Initials _____ RC  _____ AMC
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.
                                                                                            04/08/19       04/09/19
                                                                                         2:49 PM CDT     12:56 PM CDT
                                                                                       dotloop verified  dotloop verified
Serial#: 000745-900155-4511101
formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency. **(CHECK ONE):**

[X] (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services related to the lender's policy, endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; or

[ ] (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements and loan closing; or

[ ] (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, [ ] Buyer [X] Seller [ ] N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments **(CHECK ONE):**

[ ] (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

[ ] (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

## DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed. If Seller identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to

Buyer's Initials _____

Seller's Initials

FloridaRealtors/FloridaBar- 5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 000745-900155-4511101

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial rating.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

<div align="center">

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

</div>

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, and those repairs, replacements or treatments required to be made by this Contract, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("Maintenance Requirement").

**12. PROPERTY INSPECTION AND REPAIR:**

(a) **INSPECTION PERIOD:** Buyer shall have _____ (if left blank, then 15) days after Effective Date ("Inspection Period"), within which Buyer may, at Buyer's expense, conduct "General", "WDO", and "Permit" Inspections described below. If Buyer fails to timely deliver to Seller a written notice or report required by (b), (c), or (d) below, then, except for Seller's continuing Maintenance Requirement, Buyer shall have waived Seller's obligation(s) to repair, replace, treat or remedy the matters not inspected and timely reported. If this Contract does not close, Buyer shall repair all damage to Property resulting from Buyer's inspections, return Property to its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its completion.

(b) **GENERAL PROPERTY INSPECTION AND REPAIR:**

(i) **General Inspection:** Those items specified in Paragraph 12(b) (ii) below, which Seller is obligated to repair or replace ("General Repair Items") may be inspected ("General Inspection") by a person who specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida license to repair and maintain the items inspected ("Professional Inspector"). Buyer shall, within the Inspection Period, inform Seller of any General Repair Items that are not in the condition required by (b)(ii) below by

04/08/19 2:49 PM CDT dotloop verified    04/09/19 12:56 PM CDT dotloop verified

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

delivering to Seller a written notice and upon written request by Seller a copy of the portion of Professional Inspector's written report dealing with such items.

(ii) **Property Condition:** The following items shall be free of leaks, water damage or structural damage: ceiling, roof (including fascia and soffits), exterior and interior walls, doors, windows, and foundation. The above items together with pool, pool equipment, non-leased major appliances, heating, cooling, mechanical, electrical, security, sprinkler, septic and plumbing systems and machinery, seawalls, and dockage, are, and shall be maintained until Closing, in "Working Condition" (defined below). Torn screens (including pool and patio screens), fogged windows, and missing roof tiles or shingles shall be repaired or replaced by Seller prior to Closing. Seller is not required to repair or replace "Cosmetic Conditions" (defined below), unless the Cosmetic Conditions resulted from a defect in an item Seller is obligated to repair or replace. "Working Condition" means operating in the manner in which the item was designed to operate. "Cosmetic Conditions" means aesthetic imperfections that do not affect Working Condition of the item, including, but not limited to: pitted marcite; tears, worn spots and discoloration of floor coverings, wallpapers, or window treatments; nail holes, scrapes, scratches, dents, chips or caulking in ceilings, walls, flooring, tile, fixtures, or mirrors; and minor cracks in walls, floor tiles, windows, driveways, sidewalks, pool decks, and garage and patio floors. Cracked roof tiles, curling or worn shingles, or limited roof life shall not be considered defects Seller must repair or replace, so long as there is no evidence of actual leaks, leakage or structural damage.

(iii) **General Property Repairs:** Seller is only obligated to make such general repairs as are necessary to bring items into the condition specified in Paragraph 12(b) (ii) above. Seller shall within 10 days after receipt of Buyer's written notice or General Inspection report, either have the reported repairs to General Repair Items estimated by an appropriately licensed person and a copy delivered to Buyer, or have a second inspection made by a Professional Inspector and provide a copy of such report and estimates of repairs to Buyer. If Buyer's and Seller's inspection reports differ and the parties cannot resolve the differences, Buyer and Seller together shall choose, and equally split the cost of, a third Professional Inspector, whose written report shall be binding on the parties.

If cost to repair General Repair Items equals or is less than the General Repair Limit, Seller shall have repairs made in accordance with Paragraph 12(f). If cost to repair General Repair Items exceeds the General Repair Limit, then within 5 days after a party's receipt of the last estimate: (A) Seller may elect to pay the excess by delivering written notice to Buyer, or (B) Buyer may deliver written notice to Seller designating which repairs of General Repair Items Seller shall make (at a total cost to Seller not exceeding the General Repair Limit) and agreeing to accept the balance of General Repair Items in their "as is" condition, subject to Seller's continuing Maintenance Requirement. If neither party delivers such written notice to the other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

(c) **WOOD DESTROYING ORGANISM ("WDO") INSPECTION AND REPAIR:**

(i) **WDO Inspection:** The Property may be inspected by a Florida-licensed pest control business ("WDO Inspector") to determine the existence of past or present WDO infestation and damage caused by infestation ("WDO Inspection"). Buyer shall, within the Inspection Period, deliver a copy of the WDO Inspector's written report to Seller if any evidence of WDO infestation or damage is found. "Wood Destroying Organism" ("WDO") means arthropod or plant life, including termites, powder-post beetles, oldhouse borers and wood-decaying fungi, that damages or infests seasoned wood in a structure, excluding fences.

(ii) **WDO Repairs:** If Seller previously treated the Property for the type of WDO found by Buyer's WDO Inspection, Seller does not have to retreat the Property if there is no visible live infestation, and Seller, at Seller's cost, transfers to Buyer at Closing a current full treatment warranty for the type of WDO found. Seller shall within 10 days after receipt of Buyer's WDO Inspector's report, have reported WDO damage estimated by an appropriately licensed person, necessary corrective treatment, if any, estimated by a WDO Inspector, and a copy delivered to Buyer. Seller shall have treatments and repairs made in accordance with Paragraph 12(f) below up to the WDO Repair Limit. If cost to treat and repair the WDO infestations and damage to Property exceeds the WDO Repair Limit, then within 5 days after receipt of Seller's estimate, Buyer may deliver written notice to Seller agreeing to pay the excess, or designating which WDO repairs Seller shall make (at a total cost to Seller not exceeding the WDO Repair Limit), and accepting the balance of the Property in its "as is" condition with regard to WDO infestation and damage, subject to Seller's continuing Maintenance Requirement. If Buyer does not deliver such written notice to Seller, then either party may terminate this Contract by written notice to the other, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.



Buyer's Initials _____  _____       Page 6 of 13       Seller's Initials _____
FloridaRealtors/FloridaBar- 5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 000745-900155-4511101

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

**(d) INSPECTION AND CLOSE-OUT OF BUILDING PERMITS:**

**(i) Permit Inspection:** Buyer may have an inspection and examination of records and documents made to determine whether there exist any open or expired building permits or unpermitted improvements to the Property ("Permit Inspection"). Buyer shall, within the Inspection Period, deliver written notice to Seller of the existence of any open or expired building permits or unpermitted improvements to the Property. If Buyer's inspection of the Property identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

**(ii) Close-Out of Building Permits:** Seller shall, within 10 days after receipt of Buyer's Permit Inspection notice, have an estimate of costs to remedy Permit Inspection items prepared by an appropriately licensed person and a copy delivered to Buyer. No later than 5 days prior to Closing Date, Seller shall, up to the Permit Limit, have open and expired building permits identified by Buyer or known to Seller closed by the applicable governmental entity, and obtain and close any required building permits for improvements to the Property. Prior to Closing Date, Seller will provide Buyer with any written documentation that all open and expired building permits identified by Buyer or known to Seller have been closed out and that Seller has obtained and closed required building permits for improvements to the Property. If final permit inspections cannot be performed due to delays by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing which, either party may terminate this Contract, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

If cost to close open or expired building permits or to remedy any permit violation of any governmental entity exceeds Permit Limit, then within 5 days after a party's receipt of estimates of cost to remedy: (A) Seller may elect to pay the excess by delivering written notice to Buyer; or (B) Buyer may deliver written notice to Seller accepting the Property in its "as is" condition with regard to building permit status and agreeing to receive credit from Seller at Closing in the amount of Permit Limit. If neither party delivers such written notice to the other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**(e) WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the Maintenance Requirement, has made repairs and replacements required by this Contract, and has met all other contractual obligations.

**(f) REPAIR STANDARDS; ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** All repairs and replacements shall be completed in a good and workmanlike manner by an appropriately licensed person, in accordance with all requirements of law, and shall consist of materials or items of quality, value, capacity and performance comparable to, or better than, that existing as of the Effective Date. Except as provided in Paragraph 12(c)(ii), at Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable

Buyer's Initials _____  _____

Seller's Initials _____

FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 000745-900155-4511101

04/08/19
2:49 PM CDT
dotloop verified

04/09/19
12:56 PM CDT
dotloop verified

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

<div align="center"><strong>DEFAULT AND DISPUTE RESOLUTION</strong></div>

**15. DEFAULT:**
 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:
 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).
 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover

Buyer's Initials _____   _____    Page 8 of 13    Seller's Initials _____ _____
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 000745-900155-4511101

04/08/19  04/09/19
2:49 PM CDT  12:56 PM CDT
dotloop verified  dotloop verified

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, unless waived by Paragraph 12 (a), there exists at Closing no violation of the foregoing and none prevent use of the Property for **RESIDENTIAL PURPOSES.** If there exists at Closing any violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this

Buyer's Initials _____    Page 9 of 13    Seller's Initials _____

FloridaRealtors/FloridaBar- 5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 000745-900155-4611101

_04/08/19_
2:49 PM CDT
dotloop verified

_04/09/19_
12:56 PM CDT
dotloop verified

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.   LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.   TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

**G.   FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation, or the availability of services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H.   CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance and will take place in the county where the Real Property is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic means.

(ii)   **CLOSING DOCUMENTS:** Seller shall, at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable, the survey, flood elevation certification, and documents required by Buyer's lender.

(iii)   **FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and report of said information to IRS.**

(iv)   **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from

Buyer's Initials _____   Page 10 of 13   Seller's Initials _____
FloridaRealtors/FloridaBar-5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

04/08/19
2:49 PM CDT
dotloop verified

04/09/19
12:56 PM CDT
dotloop verified

Serial#: 000745-900155-4511101

formsimplicity



DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

Buyer's Initials _____    Page 11 of 13    Seller's Initials _____

FloridaRealtors/FloridaBar- 5    Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

04/08/19
2:49 PM CDT
dotloop verified

04/09/19
12:56 PM CDT
dotloop verified

Serial#: 000745-900155-4511101

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. RESERVED.**

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code "Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding.

(i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum required, if any, and timely remit said funds to the IRS.

(iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

(v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288 and 8288-A, as filed.

### ADDENDA AND ADDITIONAL TERMS

**19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this Contract (**Check if applicable**):

| | | | | | |
|---|---|---|---|---|---|
| ☐ A. | Condominium Rider | ☐ K. | "As Is" | ☐ T. | Pre-Closing Occupancy |
| ☒ B. | Homeowners' Assn. | ☐ L. | Right to Inspect/ Cancel | ☐ U. | Post-Closing Occupancy |
| ☐ C. | Seller Financing | ☐ M. | Defective Drywall | ☐ V. | Sale of Buyer's Property |
| ☐ D. | Mortgage Assumption | ☐ N. | Coastal Construction Control | ☐ W. | Back-up Contract |
| ☐ E. | FHA/VA Financing | | Line | ☐ X. | Kick-out Clause |
| ☐ F. | Appraisal Contingency | ☐ O. | Insulation Disclosure | ☐ Y. | Seller's Attorney Approval |
| ☐ G. | Short Sale | ☐ P. | Lead Paint Disclosure (Pre-1978) | ☐ Z. | Buyer's Attorney Approval |
| ☐ H. | Homeowners'/Flood Ins | ☐ Q. | Housing for Older Persons | ☐ AA. | Licensee Property Interest |
| ☐ I. | RESERVED | ☐ R. | Rezoning | ☐ BB. | Binding Arbitration |
| ☐ J. | Interest-Bearing Acct. | ☐ S. | Lease Purchase/ Lease Option | ☐ | Other: _____ |

Buyer's Initials _____    Page 12 of 13    Seller's Initials [RC] [AMC]

FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

04/08/19
2:49 PM CDT
dotloop verified

04/09/19
12:56 PM CDT
dotloop verified

Serial#: 000745-900155-4511101

formsimplicity

DocuSign Envelope ID: D7257927-02AF-4CD8-A45B-7384D447EC63

**20. ADDITIONAL TERMS:** Home Inspection must meet buyers approval.
New Roof
All repairs made to the unit involving the mold and roof leaks throughout the unit.

## COUNTER-OFFER/REJECTION

☑ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver a copy of the acceptance to Seller).

☐ Seller rejects Buyer's offer.

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

*Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.

Buyer: _____    Date: _____

Buyer: _____    Date: _____

Seller: *Robert Cramer*    dotloop verified 04/08/19 2:49 PM CDT HXTR-GOVH-IWIB-SCVI    Date: _____

Seller: *Amanda M Cramer*    dotloop verified 04/09/19 12:56 PM CDT QJZP-S2WE-MTFN-RJ2B    Date: _____

Buyer's address for purposes of notice    Seller's address for purposes of notice
Robert Schocke
1853 Spinnaker Ln    _____
Azle, Tx 76020    _____

**BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to Cooperating Brokers.

Charmein M Green    Terri Ellis
**Cooperating Sales Associate, if any**    **Listing Sales Associate**

Westerheim Realty, LLC    Keller Williams Alabama Gulf Coast
**Cooperating Broker, if any**    **Listing Broker**

Buyer's Initials _____    Page 13 of 13    Seller's Initials *RC* 04/08/19 2:49 PM CDT dotloop verified    *AMC* 04/09/19 12:56 PM CDT dotloop verified
FloridaRealtors/FloridaBar- 5   Rev.4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 000745-900155-4511101    formsimplicity

dotloop signature verification: dtlo.us/P5vZ-OF1o-slmp
DocuSign Envelope ID: 908BCEB3-7BE3-4919-8AF6-B978F0BB8AAC

## Addendum to Contract

 **FloridaRealtors®**

Addendum No. 1_____ to the Contract with the Effective Date of __04/08/2019_____ between

_Robert & Amanda Cramer_____ (Seller)

and _____Schocke Assignee_____ (Buyer)

concerning the property described as:  __13932 Playa Way, Perdido Key Fl_____

_____

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

Purchase price to be $575,00 ( five hundred and seventy five thousand)

Portico Fan and some personal items do not convey.

No home warranty to be provided.

Buyer: _____    Date: _____

Buyer: _____    Date: _____

4/11/2019

Seller: _Robert Cramer_____ dotloop verified 04/08/19 2:48 PM CDT C5GW-2OJK-9MTY-7TLS    Date: __04/08/2019_____

Seller: _Amanda M Cramer_____ dotloop verified 04/08/19 11:49 AM CDT GNZT-GOSY-7DFJ-C4XL    Date: __04/08/2019_____

ACSP-4   Rev 6/17

Serial#: 050439-100153-7303805

©2017 Florida Realtors®

formsimplicity

EXHIBIT
2

Blumberg No. 5119

DocuSign Envelope ID: ABB2C9BE-66CC-4A76-BC4D-E5C8F0F6ED6D



# ADDENDUM TO PURCHASE AGREEMENT

Addendum to the Purchase Agreement Dated: 04/11/2019

**Addendum #3**

For Property Address: 13932 Playa Way, Pensacola, FL 32507

Between Buyer(s): Schoke or assignee

And Seller(s): Robert Cramer and Amanda M Cramer

This Addendum is to be attached and made a part of the Purchase Agreement. IN THE EVENT ANY PROVISIONS OF THIS ADDENDUM CONFLICT IN WHOLE OR IN ANY PART WITH THE TERMS OF THE PURCHASE AGREEMENT, THE PROVISIONS OF THIS ADDENDUM WILL CONTROL.

Purchase price to be 575,000 ( five hundred and seventy five thousand)

Seller will mitigate the mold, and replace the roof. In the event any paint needs to be changed and cannot match current paint in the home the buyer has the option to choose the color at the cost of paint not to exceed $45 a gallon.

Home inspection to take place within 15 days after all repairs are completed, roof, mold and water damage.

Portico Fan and personal items do not convey.

Buyer and his agent to be there when mold mitigation is done. This over rides the disclosures.

Boat slip #17 to convey.

***Check only if applicable:*** ☐ There is not yet an accepted Purchase Agreement between the parties; This counter-offer to purchase will expire at _____ on _____.

BY: *Robert Cramer*
dotloop verified
04/16/19 8:00 AM CDT
ZWVM-UAWW-MJEP-FYCE
☐ Buyer ☑ Seller

BY: *Amanda M Cramer*
dotloop verified
04/16/19 7:59 AM CDT
OTBS-GOO6-MCDH-VA3Y
☐ Buyer ☑ Seller

***Check one:*** ☐ Accepted as Written    ☐ Countered by accompanying Addendum # _____

BY: _____
6891374D2912436...
☐ Buyer ☐ Seller

BY: _____
☐ Buyer ☐ Seller

Keller Williams Realty A[...] aphne | Orange Beach

EXHIBIT
3
Blumberg No. 5119

050118

dotloop signature verification: dtlp.us/wfOF-e5vW-37um
DocuSign Envelope ID: 1726CC9B-25A8-4888-B530-0C688A85AA8F



## ADDENDUM TO PURCHASE AGREEMENT

That certain contract for sale of real property, located at 13932 Playa Way, Pensacola FL _____ _____ by and between Robert & Amanda Cramer _____

As Seller(s), and Schocke or Assignee _____ as Purchaser(s)

dated 10/23/2019 _____ is hereby amended as follows:

extend contract closing date to 11/30/2019

All other terms and conditions remain in full force and effect.

IN WITNESS WHEREOF this Addendum is executed _____.

Witness _____    Purchaser _____

_Terri Ellis_    dotloop verified 10/23/19 2:08 PM CDT 2ZZV-LXVF-XKCS-YDED    _Robert Cramer_    dotloop verified 10/23/19 2:21 PM CDT FRE4-ID9R-OA9O-IC6Z

Witness    Seller

_Amanda M Cramer_    dotloop verified 10/23/19 2:24 PM CDT UBPS-TEK7-SQAF-SONT

Witness    Seller



EXHIBIT

4

Blumberg No. 5119

dotloop signature verification: dtlp.us/iLM5-Ldod-CEi4
DocuSign Envelope ID: D09914A6-A981-4CEE-B8F2-D06D71E0B1E2



# ADDENDUM TO PURCHASE AGREEMENT

Addendum to the Purchase Agreement Dated: 04/06/2019

<div style="border:1px solid;">Addendum #3</div>

For Property Address: 13932 Playa Way, Pensacola, FL 32507

Between Buyer(s): Schocke or assignee

And Seller(s): Robert Cramer and Amanda M Cramer

This Addendum is to be attached and made a part of the Purchase Agreement. IN THE EVENT ANY PROVISIONS OF THIS ADDENDUM CONFLICT IN WHOLE OR IN ANY PART WITH THE TERMS OF THE PURCHASE AGREEMENT, THE PROVISIONS OF THIS ADDENDUM WILL CONTROL.

closing date extended to 2/29/20

**Check only if applicable:** ☐ There is not yet an accepted Purchase Agreement between the parties; This counter-offer to purchase will expire at _____ on _____.

BY: *Amanda M Cramer*    dotloop verified 11/19/19 9:27 AM CST UD6L-7HJU-NLVT-T0YF
☐ Buyer  ☑ Seller

BY: *Robert Cramer*    dotloop verified 11/18/19 12:50 PM CST IJVO-QUUD-WIEW-7TG9
☐ Buyer  ☑ Seller

**Check one:** ☐ Accepted as Written   ☐ Countered by accompanying Addendum # _____

BY: _____
☐ Buyer  ☑ Seller

BY: DocuSigned by: [signature]
6891374by9436... ☐ Buyer  ☐ Seller

Keller Williams Realty Alab[...]ne | Orange Beach

**EXHIBIT**

**5**

Blumberg No. 5119

050118

DocuSign Envelope ID: 5FB20466-45FC-4030-B666-E2B8074EF80F



## Addendum to Contract

Addendum No. ___2___ to the Contract with the Effective Date of _____04/09/2019_____ between

_____ Cramer _____ (Seller)

and _____ Schocke or Assignee _____ (Buyer)

concerning the property described as: 13932 Playa Way, Pensacola, Fl. 32507

_____

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

1) Extension of the contract to close on or before April 30, 2020
2) Paint color for the unit: Walls-Interior color is SW7036- Accessible Beige- Satin
3) Paint color for the unit: Ceiling color is SW7007 - Bright White- Flat
4) Paint color for the unit: Trim/Doors/Cabinets- Pacer White- Semi Gloss
5) Termite Inspection- Friday March 6, 2020 as long as ok'd by DKM
6) Seller to give buyer the allowance amount for the carpet . He will give them the color once he goes to flooring store.

Buyer to release earnest money to seller if after all contingencies have been removed and buyer decides to then not proceed with purchasing 13932 Playa Way, Pensacola FL.



DocuSigned by:
8891374D2912436...      2/29/2020

DS
[ RC ]     DS
[ aC ]

DocuSigned by:

Buyer: _____6891374D2912436..._____      Date: _____2/26/2020_____

Buyer: _____      Date: _____

Seller: Robert Cramer      Date: 2/29/2020 | 1:39:47 PM PST
       14F26AF5878248F...

Seller: amanda cramer      Date: 2/29/2020 | 1:39:56 PM PST
       4243DE8AC8C446D...

ACSP-4   Rev 6/17
Serial#: 069616-900158-2765780

EXHIBIT
6
Blumberg No. 5119

©2017 Florida Realtors®
Form Simplicity

# EMMANUEL, SHEPPARD & CONDON
## ATTORNEYS AT LAW SINCE 1913

R. BRADLEY ADAMS
SUZANNE BLANKENSHIP ^
ALAN B. BOOKMAN ◆
ADAM C. COBB ◆
SCOT B. COPELAND ◆
ERICK B. DRLICKA ◆◆◆ ◆◆◆◆
ROBERT A. EMMANUEL ◆◆
GREGORY P. FAYARD
SALLY BUSSELL FOX ◆
VAN P. GEEKER
CHARLES P. HOSKIN
HOLLY V. JURNOVOY
ANDREA C. LYONS
JOHN W. MONROE, JR. ◆
GALEN M. NOVOTNY
MICHELLE A. OLLIFF

POST OFFICE DRAWER 1271
PENSACOLA, FLORIDA 32591-1271

30 SOUTH SPRING STREET
PENSACOLA, FLORIDA 32502-5612
ESCLAW.COM  PENSACOLALAWYER.COM
(850) 433-6581
TOLL FREE 1-800-433-6581
FAX (850) 434-5856

WANDA W. RADCLIFFE
H. WESLEY REEDER ◆◆
T. SHANE ROWE
RACHEL L. SHEFFIELD
BENJAMIN T. SHELL
JOHN G. TERHAAR
WARREN R. TODD
LORI ELLEN WARD ◆
ADAM J. WHITE

PATRICK G. EMMANUEL JR., OF
COUNSEL
P. MICHAEL PATTERSON, OF COUNSEL
GERALD L. BROWN, RETIRED
PATRICK G. EMMANUEL, RETIRED
ALAN C. SHEPPARD, 1921 – 2014
A. G. CONDON, JR., 1934 – 2011

**FLORIDA BOARD CERTIFIED**
◆**REAL ESTATE LAWYER**  ◆◆**CONSTRUCTION LAWYER**  ◆◆◆**CIVIL TRIAL LAWYER**
◆◆◆◆**LABOR AND EMPLOYMENT LAWYER**  ^**CONDOMINIUM AND PLANNED DEVELOPMENT LAWYER**

May 28, 2020

Robert Cramer
Amanda M. Cramer
121 Gertrude Cramer Ln
Rayne, LA 70578

Re:  Schocke, Robert: Real Estate Contract
     15054-151208

Dear Mr. and Mrs. Cramer:

Our firm represents Robert Schocke regarding the Residential Contract For Sale and Purchase for the property located at 13932 Playa Way, Pensacola, Florida. Mr. Schocke has been advised by his agent that you do not intend to complete the repairs required by the contract. Accordingly, we consider you in breach of the contract.

Pursuant to paragraph 16 (b) of the Residential Contract For Sale and Purchase between Robert Cramer and Amanda M. Cramer, as sellers, and Robert Schocke, as buyer, the buyer hereby demands mediation of the contract dispute pursuant to Florida Rules for certified and court-reported mediators and Chapter 44, F. S. as amended. Buyer nominates the following certified circuit mediators to mediate this dispute.

Louis F. Ray, Jr.
604 Port Royal Way
Pensacola FL 32502

or



EXHIBIT
7
Blumberg No. 5119

Robert Cramer
Amanda M. Cramer
May 28, 2020
Page 2

Michael J. Schofield
125 East Intendencia Street
Pensacola, FL 32502

If neither of these Florida certified circuit court mediators is acceptable to you for mediation of this contract dispute, please furnish me with the names of two other Florida certified circuit mediators so that Mr. Schocke and I can select a mediator for this dispute.

Yours very truly,

CHARLES P. HOSKIN

CPH/cph
cc: Robert Schocke

Copy To:
Terri Ellis
Keller Williams Alabama Gulf Coast
4725 Main Street, Suite F
Orange Beach, AL 36561
ellisedgegulfcoast@gmail.com

## Chuck Hoskin

| | |
|---|---|
| **From:** | Cecily Parker <CMP@beggslane.com> |
| **Sent:** | Friday, May 29, 2020 10:24 AM |
| **To:** | Chuck Hoskin |
| **Subject:** | RE: 15054-151208 Schocke, Robert: Real Estate Contract: Purchase of 13932 Playa Way, Pensacola, FL Robert and Amanda Cramer adv. Robert Schocke |
| **Attachments:** | Addendum FL - Signed.pdf; Schocke Counter-Offer.pdf; 13932 Playa Way Original Contract.pdf; Addendum 2 - Signed.pdf |

Notice: External

Chuck,

I tried to give you a call this morning but the call cut out before I could leave a message. Thank you for sending me a copy of your demand letter.

My Clients won't be mediating with Mr. Schocke. In short there was no meeting of the minds between the parties for a contract to sell the property after April 30, 2020 and when the parties didn't close on or before this date, the Contract terminated. The Contract (attached as "13932 Playa Way Original Contract") had an original closing date of October 30, 2019. The last addendum modifying the closing date that was signed by both Mr. Schocke and the Cramers extended the closing date to on or before April 30, 2020 (attached as "Addendum 2 – Signed"). On April 18, 2020, the Cramers offered to sell the property to Mr. Schocke for $560,000 in an as is condition with a closing date no later than May 31, 2020 (attached as "Addendum FL – Signed"). That offer wasn't accepted by Mr. Schocke. Instead, Mr. Schocke offered the Cramers to buy the property for $575,000 in a not as is condition with the closing date extended until June 31, 2020 (attached as "Schocke Counter-Offer"). As is also clear from the document Mr. Schocke signed, the Cramers did not agree to these terms and have not accepted Mr. Schocke's counter-offer. Therefore, the Contract terminated after April 30, 2020 when the parties didn't close. Since there is no meeting of the minds and no written contract to sell the property with a closing date after April 30, 2020, there is nothing to mediate.

My Clients have also told me that Mr. Schocke's realtor has entered the property and tried to direct my Clients' contractors to make certain repairs. Please pass on to your Client's realtor that she is not permitted to do this and does not have permission to enter the property.

Please feel free to give me a call to discuss this matter.

Cecily

---

**From:** Chuck Hoskin [mailto:CPH@esclaw.com]
**Sent:** Friday, May 29, 2020 7:53 AM
**To:** Cecily Parker
**Subject:** RE: 15054-151208 Schocke, Robert: Real Estate Contract: Purchase of 13932 Playa Way, Pensacola, FL Robert and Amanda Cramer adv. Robert Schocke

Cecily:

Attached is a copy of the letter I sent to the Cramers and their agent. Both Michael Schofield and Lou Ray have cleared conflicts, but let me know if you would like to use someone else.

Chuck

This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If th[...]e is not the intended recipient, you are hereby

EXHIBIT
8

Blumberg No. 5119

notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (850-433-6581) or by electronic mail (choskin@esclaw.com) and then delete this message and all copies and backups thereof. Thank you.

Charles P. Hoskin
Direct Dial:  850-444-3881
Fax:  850-434-7163

 EMMANUEL SHEPPARD & CONDON
CELEBRATING 100 YEARS


Martindale-Hubbell®
AV PREEMINENT®
Peer Rated for Highest Level of Professional Excellence
2020

**From:** Cecily Parker
**Sent:** Thursday, May 28, 2020 5:02 PM
**To:** Chuck Hoskin <CPH@esclaw.com>
**Cc:** Amber Nall <AMN@beggslane.com>; Charlie Wiggins <CTW@beggslane.com>
**Subject:** 15054-151208 Schocke, Robert: Real Estate Contract: Purchase of 13932 Playa Way, Pensacola, FL Robert and Amanda Cramer adv. Robert Schocke

Notice: External

Chuck,

I hope you are doing well.  We were retained to represent the Cramers in the sale of 13932 Playa Way this afternoon.  We just got the relevant documents late this afternoon and I am working on getting up to speed.  I hope to have a substantive response to you tomorrow.

I hope you have a good evening,

Cecily


SINCE 1883

CECILY M. PARKER
ATTORNEY AT LAW

BEGGS & LANE, RLLP
501 COMMENDENCIA STREET | PENSACOLA, FLORIDA 32502
PHONE: (850) 469-3336 | FAX: (850) 469-3331
CMP@BEGGSLANE.COM | BEGGSLANE.COM

CONFIDENTIALITY NOTICE:  This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.  This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

Unless expressly provided that the advice ("the advice") contained in the above message ("this message") is intended to constitute written tax advice within the meaning of Section 10.37 of IRS Circular 230, the sender intends by this message to communicate general information for discussion purposes only, and you should not, therefore, interpret the advice to be written tax advice. The sender will conclude that you have understood and acknowledged this important cautionary notice unless you communicate to the sender any questions you may have in a direct electronic reply to this message.

With wire fraud, email hacking and phishing attempts on the rise, it is vitally important that prior to sending any funds, you call the Attorney, Paralegal, or Secretary working on your file to verify the wire instructions that you received.  Only use verified contact information that you have been provided.  Our Firm does not provide wire instructions via unsecure email so please do not respond to any email purporting to be from our Firm that indicates that updated or corrected wire instructions are attached or contained within the body of that email.

ATTORNEY-CLIENT CONFIDENTIAL PRIVILEGED COMMUNICATION

IN THE CIRCUIT COURT OF ESCAMBIA COUNTY, FLORIDA

ROB SCHOCKE,

    Plaintiff,

v.

                                   Case No.: 2020 CA 000697
                                   Division: E

ROBERT CRAMER AND
AMANDA M. CRAMER,
Husband and wife,

    Defendants.
_____/

**TO:  Clerk of the Circuit Court of
      Escambia County, Florida**

**<u>NOTICE OF FILING NOTICE OF REMOVAL OF CIVIL ACTION</u>**

You are hereby notified that Defendants, Robert Cramer and Amanda M. Cramer, have on the 17th day of June, 2020, filed in the United States District Court for the Northern District of Florida, Pensacola Division, a Notice of Removal of Civil Action of the above-entitled cause, a copy of which is attached hereto and made a part hereof. This Notice serves to effect full removal of this case pursuant to 28 U.S.C. § 1446(d), thereby precluding this State Court from proceeding further in this case, unless and until this case is remanded hereto by the United States District Court.

**EXHIBIT  2**

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been furnished to the following counsel

of record by the Florida E-Filing Portal on June 17, 2020:

Charles P. Hoskin
Emmanuel Sheppard and Condon
30 S. Spring St.
Pensacola, FL 32502
choskin@esclaw.com
lbouler@esclaw.com
adk@esclaw.com
Attorney for Plaintiff

*s/Cecily M. Parker*
CHARLES WIGGINS
Fla. Bar No.:  0048021
CECILY M. PARKER
Fla. Bar No.: 98170
ctw@beggslane.com (primary)
cmp@beggslane.com (primary)
amn@beggslane.com (secondary)
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL  32502
T:  (850) 432-2451
F:  (850) 469-3331
*Attorneys for Defendants*

2